# MEMORANDA

# CASES NOT REPORTED IN FULL.

DUANE H. NASH AND SCOTIA C. NASH, RESPONDENTS, *v.*
FREDERICK G. WEAVER, AS SHERIFF OF ONEIDA COUNTY,
APPELLANT.

*Conditional sale — what transaction is held to constitute one — what instrument need*
*not be recorded as a chattel mortgage.*

APPEAL from a judgment in favor of the plaintiff, entered upon a
trial at Circuit.

This is an action against the sheriff of Oneida county for seizing
and selling by virtue of an execution in favor of Lorenzo S. Fitch,
against James L. Filkins, five certain mowing machines in the
possession of the said Filkins, the execution debtor.

The plaintiffs claimed title to the said mowing machines and
brought their action against the sheriff for seizing and selling the
same and converting the same to his own use. The defendant
justified under the execution against Filkins.

The question presented in the case is whether the title to
the mowing machines is in Filkins, or whether he held the pos-
session of the same by virtue only of a conditional sale from the
plaintiffs.

The action was tried at the Oneida Circuit and resulted in a
verdict taken for the plaintiffs, establishing the value of the mowing
machines by the direction of the court, who reserved the case for
further consideration as to the other questions involved.

The plaintiffs were engaged in business at the city of New York
as dealers in agricultural implements. Filkins was, on the 10th
day of March, 1876, appointed by them a local agent for the sale of

reaping and mowing machines and hay rakes, in certain towns in Oneida county, under a printed agreement in which he guaranteed the sale of all machines ordered by him and became responsible for the payment of each machine ordered by him, and contained an article as follows : " And in the case of failure on the part of agents, from any cause, to sell all of the machines ordered by them, *they are to purchase said machines* on the day of final settlement (September 1, 1876), and give their note for the same, with interest at the rate of      per cent per annum, to be secured by satisfactory indorser, or by a lien on said machines, as the said Nash & Brother may elect."

Filkins and the plaintiffs had a settlement under the agreement on the 9th day of September, 1876, at which time Filkins gave his note to the plaintiffs for the amount of the mowing machines and rakes he had ordered up to that time, being a note for $502.50, payable on the 1st day of September, 1877, to the order of the plaintiffs at the Waterville National Bank, but without any indorser.

It seems that the plaintiffs were accustomed to take from their agents on such settlements receipts for the machines which had been delivered, specifying that the delivery was only conditional and that the title was not to pass to the agents until the payment of the notes given on such settlement ; and one of the plaintiffs, who was a witness but seemed to have no precise recollection of the circumstances which attended the giving of the note by Filkins for $502.50, stated that if the note was given for the machines had by Filkins, there was such a *receipt taken with it*, and that " a receipt was signed with the notes ; " but the witness further stated that he could not say *of his own knowledge* whether a receipt was given with the note of $502.50. At the time that note was given the original agreement for the agency was canceled. Filkins, on being asked by the counsel for the plaintiffs whether he gave a receipt with the note for $502.50 said, " I don't remember." And being asked what he gave in connection with that note said, " I don't remember about that." Apparently there was no one present at the trial who was present at the giving of the note except Filkins.

On the 14th of November, 1877, there having been paid by Filkins on his said note only the sum of fifty-two dollars and fifty cents, he took up the note by giving new notes for the balance due

thereon, and also executed and delivered to the plaintiffs a receipt as follows :

"WATERVILLE, N. Y., *November* 14th, 1877.

"Received from Nash & Bro., five William Anson Wood Mowers and four Coates Hay Rakes, delivered to me this day, under a bargain for the sale thereof, and for which I have given my notes, payable on or before the 1st day of October, November and December, 1878, for four hundred and twenty-five dollars ; and it is hereby expressly understood that the said Nash & Bro. neither part with nor do I acquire any title to said machines until said notes are fully paid ; and in case of default of payment of said notes at maturity, said Nash & Bro., or their agents, are hereby authorized to remove said machines from my farm or elsewhere.

"Post-Office Address — Waterville, N. Y.

"JAMES L. FILKINS."

This instrument was executed and delivered to the plaintiffs simultaneously with the delivery of the notes therein specified and the taking up of the note for $502.50.

The machines levied upon by the defendant and sold, were the five machines, "Wood Mowers," specified in the contract of November 11, 1877. The judgment on which the execution issued was recovered on the 8th day of January, 1877, and the execution was delivered to the sheriff on the 1st day of October, 1878. The sheriff having been notified of the claim of the plaintiffs to the property, took a bond of indemnity from the plaintiff in the execution.

The trial judge found that the title to the property was in the plaintiffs when the same was taken by the defendant ; that the same was wrongfully taken and converted by the defendant, and ordered judgment for the plaintiffs for the amount found by the jury as the value of the machines taken and sold, with interest from October 8, 1878, and the court being requested by the counsel for the defendant, on the settlement of the case, to find that the title to the machines in question vested in Filkins on the 9th day of September, 1876, when he gave his note for $502.50, either as matter of fact or conclusion of law, declined so to find. And being requested to find that the instrument dated November 14, 1877, was a chattel mortgage which should have been filed in the town

clerk's office in order to preserve the plaintiffs' lien, declined so to find.

The court at General Term said : " From these findings and refusals, we infer that the trial judge intended to find that there was no time when the plaintiffs had relinquished their title to Filkins, but that they continued to hold the title as provided by the contract under which Filkins took the agency on March 10, 1876, as modified by that of November 14, 1877.

It is true that on a sale of goods, where the property is delivered to the vendee, the legal presumption is that the title passes to him. So, too, where a sale is upon condition of the payment of the price and the vendor receives the vendee's note for the price and delivers the property without other explanation, the presumption is that the title passes. But this presumption is a matter of evidence. If the vendor at the time expressly reserves to himself the title and makes what is called a conditional sale the presumption is removed. (*Herring* v. *Hoppock*, 15 N. Y., 409 ; *Smith* v. *Lynes*, 5 id., 41 ; *Cole* v. *Mann*, 62 id., 1 ; *Ballard* v. *Burgett*, 40 id., 314.) Whether the delivery was absolute or conditional is a question of fact and depends upon all the evidence ; and the question in effect, decided by the trial judge, was that the delivery of the machines to Filkins was not absolute upon his execution and delivery of the note of $502.50. (*Fleeman* v. *McKean*, 25 Barb., 474.) In this case the contract, by which the agency of Filkins was created, provided that Filkins should purchase all unsold machines at the settlement in September, 1876, and for the purchase-price Filkins was to give his note secured by a satisfactory indorser, or that the purchase-price was to be secured by a lien upon the machines. The ordinary mode of securing the purchase-price by a lien on the machines was by making the sale a conditional one, and retaining the title in the vendor until the payment of the purchase-price.

There was nothing in the circumstances of this case which render it probable that the vendors intended to part with the title absolutely upon the reception of Filkins' note without an indorser or other security, and the presumption is that when the note was received a receipt was taken from Filkins similar to that taken on the 17th of November, 1877, when the note was renewed for the second year, as was testified to by Daniel H. Nash, which receipt was canceled

and destroyed when the receipt of November seventeenth was taken. This is the theory upon which, as we understand, the findings and refusals to find by the trial judge, rested, and we think there was evidence to sustain his conclusions. The sheriff is not in the attitude of a *bona fide* purchaser. (*Comer* v. *Cunningham*, 77 N. Y., 391.)

If the preceding views are correct they dispose of the only question of any importance presented in the case.

*Z. M. Knowles*, for the appellant.

*Chas. H. Searle*, for the respondents.

Opinion by TALCOTT, P. J.; HARDIN and RUMSEY, JJ., concurred.

Judgment affirmed, with costs.